Drake, Cb. J.,
delivered tbe opinion, of tbe court.
On tbe 24th of April, 1858, tbe claimant entered into a contract witb tbe Post Office Department to transport tbe mail, from July 1, 1858, to June 30,1862, on route No. 7904, from Kidron, Arkansas, to Webber’s Falls and back, once a week, at $700 per year.
He stands credited on tbe books of the Auditor of tbe Treasury for tbe Post Office Department witb a balance of $417.75, for transportation of tbe mail from October 1, 1860, to May G, 1S61, tbe day when an Arkansas convention passed an ordinance declaring tbe secession of that State from tbe Union.
In tbe Sundry civil appropriation Act March 3, 1877 (19 Stat. L., 344, 362, ch. 105). is the following provision:
“That tbe sum of $375,000, or so much thereof as may be necessary, be appropriated to pay tbe amount due to mail contractors for mail service performed in tbe State of Alabama, Arkansas, Florida, Georgia, Kentucky, Louisiana, Mississippi, Missouri, North Carolina, South Carolina, Texas, Tennessee, Virginia, and West Virginia, in tbe years 1859,1860,1861, and before said States respectively engaged in war against tbe United States; and the provisions of 3480 of Revised Statutes of tbe United States shall not be applicable to tbe payments therein authorized; Provided, that any such claims which have been- paid by tbe Confederate States government shall not be again paid.”
As early as March 15, 1869, tbe claimant’s demand for tbe mail service now sued for was presented to tbe Auditor; and it was again presented on tbe 17th of December, 1873, and again on tbe 16th of March, 1877.
At an early day after tbe passage of said act, tbe Secretary of tbe Treasury issued an order that no payments should be made out of that appropriation until all claims covered by its terms should have been received and adjusted; and if tbe appropriation should prove insufficient, they should then be paid pro rata. In consequence of this order no claims were adjusted within two years after the date of tbe act; and the appropriation was therefore covered into tbe Treasury, under tbe requirement of section 5 of the Legislative, executive and judicial appropriation Act June 20, 1874 (18 Stat. L., cb. 328, p. 85), which provides “that from and after tbe 1st day of July, 1874, and of each year thereafter, tbe Secretary of tbe Treasury shall cause all unex- *565 pended balances of appropriations wMcb shall have remained upon the books of the Treasury for two fiscal years to be carried to the surplus fund and covered into the Treasury.”
This covering of the appropriation into the Treasury deprived the officers of the Treasury Department of any power to pay this claim; and consequently the claimant is wholly without recourse if he has it not in this court.
On behalf óf the defendants it is contended that he has no right to payment, except out of that particular appropriation; which being no longer available, he has no legal standing as a creditor of the government here or elsewhere. We do not concur in that view.
An appropriation by Congress of a given sum of money, for a named purpose, is not a designation of any particular pile of coin or roll of notes to be set aside and held for that purpose, and to be used for no other; but simply a legal authority to apply so much of any money in the Treasury to the indicated object.
Every appropriation for the payment of a particular demand, or a class of demands, necessarily involves and includes the recognition by Congress of the legality and justice of each demand, and is equivalent to an express mandate to the Treasury officers to pay it. This recognition is not affected by any previous adverse action of Congress; for the last expression by that body supersedes all such previous action.
When, therefore, Congress made the appropriation in question, it was as if the United States said to this claimant, and every other of like kind, — “The legality and justice of paying you for the service you rendered in carrying the mails under your contract with the United States, in 1859,1860, or 1861, are recognized; and if you were not paid by the Confederate States government for so much of that service as you rendered before the State in which it was rendered ‘ engaged in war against the United States,’ you can, on application to the proper officers at the Treasury, get whatever amount may be legally ascertained to be due you for that service; and in order to remove the obstacle to your payment which section 3480 of the Revised Statutes has heretofore interposed, we declare that that section shall not apply to your case.”
So, in effect, by that appropriation, said Congress to those contractors, well knowing when it did so that, unless it so said, *566 there was no possible way for them to get payment through executive action, and that their, right to invoke the aid of this court had long before been barred by existing law.
Did Congress intend that that recognition of the legality and justice of those claims should be annulled unless the parties succeeded in getting payment before the end of two years? We think not. Beyond doubt, the authority to take the money out of the Treasury for such payment under that appropriation lapsed at the end of the two years; but the right of the parties to assert and maintain their claims, once recognized and affirmed by Congress, became thenceforth, in virtue of that act, an acknowledged right against the United States, which this court is bound to take cognizance of under its general power “to hear and determine all claims founded upon any law of Congress.”
But while we thus affirm our right to take jurisdiction of a claim of this description, we are met by a difficulty to which we will now refer.
But for the proviso to that section we should not probably hesitate in rendering a judgment in the claimant’s favor for the amount standing to his credit on the Auditor’s books; but that proviso, in connection with another matter, presents an obstacle which we do not see our way clear to overcome.
In our opinion, the effect of the proviso is to require from the claimant, at least, some evidence to raise a reasonable presumption that the claim was not paid by the so-called Confederate States government. On that point the claimant, at the trial, offered no evidence whatever, though his petition avers that the claim was not paid by that government, or by any government, or pretended government, of any State.
Not only is there an entire absence of any such evidence, but we have had brought to our notice two acts passed by the Congress of the Confederate States, which seem to us to have an important bearing on the decision of this case. We present them here in full.
“AN ACT to collect, for distribution, the moneys remaining in the several post offices of the Confederate States at the time the postal service vas taken in charge by said government.
“ The Congress of the Confederate States of America do enact, That it shall be the duty of the Postmaster General to collect all moneys due from the several postmasters within the Con *567 federate States, and which they had not paid over at the time the Confederate States took the charge of the postal service, and the several postmasters are hereby required to account to the General Post-Office of this Government under the same rules, regulations, and penalties that were prescribed by the law under which said moneys were received.
“Sec. 2. The moneys so received shall be kept separate and distinct from the other funds of the Post-Office Department, and shall constitute a fund for the pro ruto payment of claims for postal service which accrued before the Postmaster General took charge of the postal service in the States respectively comprising this Confederacy, as may hereafter be provided.
“Sec. 3. It shall be the duty of the Postmaster General to mate proclamation that all persons who are citizens of the Confederate States of America, and -who may have rendered postal service in any of the States of this Confederacy, under contracts or appointments made by the United States government before the Confederate States government took charge of such service, shall present their claims to his department, verified and established according to such rules as he shall prescribe, by a time therein to be set forth not less than six months, and requiring the claimant to state, under oath, how much has beenandthe\late.of such payments, on account of the contract or appointment under which said claim occurred, and what fund or provision has been set apart or made for the further payment of the whole or any portion of the balance of such claim, by the government of the United States, or any of the States; and they shall also state, on oath, whether they performed fully the service according to their contracts or appointments during the time for which they claim pay, and if not, what partial servicie they did perform, and what deductions have been made from their pay, so far as they know, on account of any failure, or imrtial failure, to perform such service; and the Postmaster General shall, as soon as he shall have collected such moneys from said postmasters, and ascertained the amount of claims against the Post-Office Department and the amount received respectively by the claimants as aforesaid, and the provisions, if any, for future payment, make a report of the same, so that future action may be taken thereon as respects the distribution.
“Sec. 4. All claims for postal service required to be presented by this bill shall be barred as against this fund, unless presented within six months after the proclamation of the Postmaster General shall have been made.
“Approved August 30, 1861.”
*568 “AN ACT to provide for tlie payment of tlie sums ascertained to be due for postal service to citizens of tlie Confederate States by tlie Postmaster General.
“ The Congress of the Confederate States of America do enact, That the Postmaster General of the Confederate ¡States do proceed to pay to the several persons, or their lawfully authorized agents or representatives, the sums respectively found due and owing to them for postal service rendered in any of the States of this Confederacy, under contracts or appointments made by the United States government, before the Confederate States government took charge of such service, as the said sums have been credited and ascertained by him under the provisions of an act entitled “An act to collect for distribution the moneys remaining in the several post-offices of the Confederate States at the time the postal service was taken in charge by said government,” approved the thirtieth day of August, 1861; but the sums authorized by this act to be paid are only the balances found due after all proper deductions shall have been made on account of previous payments made by the United States, or any of the States, or of available provisions made in whole or in part for such payment by said government, or of any of the States, and after all proper deductions for failures or partial failurses to perform the service according to their several contracts or appointments during the time for which they claim pay : Provided, That the provisions of this act shall only extend to loyal citizens of the Confederate States.”
From those acts it appears, 1. That all United States postmasters in the insurrectionary States were, as early as August 30,1861, required to pay over to the General Post-Office of these States all moneys of the United States which they had not paid over to the United States at the time the Confederate States took charge of the postal service: 2. That the Postmaster General of the Confederate States was, by proclamation, to notify all contractors with the United States for the transportation of mails in the insurrectionary States, who had rendered postal service in any of those States before the Confederate States government took charge of such service, to present to him, within six months after his proclamation had been made, their claims for postal service so rendered: 3. That as soon as he should have collected those moneys, and ascertained the amount of such claims, he should make a report to the Confederate Congress on the subject, “so that future action may be taken thereon as respects the distribution” of the moneys: and 4. That by the said act of September 27, 1862, the Con *569 federate Postmaster-G-eneral was required, not to distribute those moneys pro rata among the United States contractors whose claims, of the above description, he found to be due and owing, but to proceed to pay to them, or their lawfully authorized agents or representatives, the whole amount of those claims.
In our judgment, the defendants, in any such case as this, are entitled to the benefit of the presumption that every United States mail contractor, on routes within the insurrectionary States, who came within the terms of those two laws, did receive full payment from the insurrectionary government of all that had been earned by him under his contract, prior to the time when the State in which his route lay declared its secession from the Union.
As before intimated, the claimant has not, in the least degree, attempted to meet and rebut that presumption, though the necessity for doing so is plainly indicated on the face of the very statute under which he seeks to maintain this suit.
Such being the case, nothing is left us but to dismiss his petition, and it is dismissed.