Richardson, J.,
delivered the opinion of the court:
On the 3d day of October, 1860, just before the organization of the rebellion against the United States, by the passage of ordinances of secession by some of the States, the claimant entered into a written contract with the Postmaster-General to carry the mails by steamships from Charleston, S. 0., to Key West and back, twice a month, commencing October 15, 1860, and ending June 30, 1864, at the compensation of $40,000 a year.
The legislature of South Carolina passed an ordinance of secession December 20, 1860, and other Southern States soon did the same. The mail service in all those States became disorganized even before the passage of those ordinances; and yet during that time as well as afterwards and until the government of the Confederate States was fully organized, the mails continued to be carried somewhat irregularly on most of the routes under existing contracts with the United States.
In the case of Reeside v. The United States (8 Wall., 38, and 7 C. Cls. R., 89) the Supreme Court say in relation to the condition of affairs then existing:
“ The policy of the government was to conciliate the people, and to separate them, if possible, from the leaders; and one of the means used for this purpose was to continue these mail and postal accommodations so long as any hope existed of preventing the rebellion or continuing peaceful relations.”
As to this particular route now under consideration, however, the Postmaster-General availed himself of a reservation in the contract, that—
“The Postmaster-General may curtail or discontinue the service in whole or in part, he allowing one month’s extra pay on the amount dispensed with.”
And on the 2d of January, 1861, he made an order, to take effect immediately, of which the claimant was duly notified, that the service under their contract should be “discontinued, and one month’s extra pay allowed on the amount dispensed with.”
Thereafter the claimant performed no further service.
By the express terms of the contract, as well as by the order of the Postmaster-General, the United States thereupon became indebted to the claimant in the sum of $3,333.33, for the *15 amount of one month’s extra pay, and that obligation has never been discharged.
That this sum was and still is due to the claimant cannot be doubted, and is conceded on the part of the defendants. In fact as late as 1881 an account in favor of the claimant for the amount was stated by the Auditor for the Post-Office Department, and transmitted to Congress as a valid outstanding indebtedness. The claimant would be entitled to judgment for the amount upon that state of facts alone if his cause of action had not accrued more than six years before the filing of his petition. He might have brought suit January 2, 1861, but he ■did not file his petition until January 16, 1883, more than twenty-two years after the cause of action accrued. He may have been deterred from doing so by the terms of the act (now Rev. Stat., § 3480), which made it—
“ Unlawful for any officer to pay any account, claim, or demand against the United States which accrued or existed prior to the 13th of April, 1861, in favor of any person who promoted, encouraged, or in any manner sustained the late rebellion, or in favor of any person who during such rebellion was not ■known to be opposed thereto and distinctly in favor of its suppression.”
But no such defense is proved or set up,at this time. It is 'dear, however, that, independently of that section, this court has no jurisdiction of the original cause of action at this late ■day. (Rev. Stat., § 1069.)
But it is urged that a recovery may be had under the act of March 3,1877, chapter 105 (19 Stats. L., 362), appropriating $375,000 “ to pay the amount due to mail contractors for mail service performed in the States of * * * Florida, Georgia, * * * South Carolina, * * * in the years 1859, 1860, 1861, and before said States, respectively, engaged in war against the United States,” and exempting such payments from the provisions of Bevised Statutes, section 3480, above cited, but subject to a provision that claims under it which have been paid by the Confederate States Government shall not be again paid.
We have held in several cases that mail contractors described in that act may recover for “ mail service performed” in the States therein named during the years 1859,1860, and 1861, notwithstanding the period of six years’ limitation had expired *16 before the passage of the act, on the ground that Congress had revived and renewed the cause of action, as of the date of the passage of the act by thus appropriating and providing the means of payment. (Hukill's Case, 16 C. Cls. R., 562; Huffman's Case, 17 id., 59; Hulkill and other Cases, 18 id., 180; George's Case, id., 132.)
The claimant would therefore be entitled to judgment in his favor if his claim were embraced in the description of those for which the appropriation is thus made. The appropriation is for the payment -of “mail service performed” in the States named, and the claimant’s demand is for a liquidated sum due-him for a discontinuance of the service on the part of the defendants, or, in other words, for not being allowed to go on with the service and carry the mails.
While contractors for carrying the mails for the years 1859r 1860, and 1861 in the Southern States, or elsewhere in fact, had no reinedy in this court as late as the year 1S77 for any sums, due them, either for services actually performed or for breach of contracts on the part of the defendants, or on account of the discontinuance of service by the Postmaster-General, Congress saw fit to make an appropriation for the benefit of such contractors, “for mail service performed,” but omitted to provide for the payment of claims for discontinuance of service unless they are embraced within the meaning of the words “mail service performed.”
In view of the fact that there was mail service performed for the United States in the rebellious States during the troubled times just before war actually begun, and that it was fostered and encouraged by the government in accordance with its policy,, as stated by the Supreme Court — service which the words of the act exactly described — we are of opinion that, according to well-settled rules of interpretation, those words must be held to apply to such service, and to nothing more. They are not ambiguous in themselves, and when applied to the actual condition of affairs they aptly described an existing class of cases.. In our opinion it would be a forced and unwarranted interpretation to hold that a sum due for the discontinuance of mail service under a contract is due for “mail service performed.”
It is urged on the part of the claimant that this one month’s extra pay is an allowance in lieu of actual service which he was- *17 ready and willing- to perform, and which was prevented by the defendants, and so may be held to be due for “mail service performed,” within the meaning- of the act. But it seems to us that the allowance was more in the nature of damages, liquidated damages, agreed upon by the terms of the contract, for a breach of other parts of the agreement.
If we should go beyond the boundaries of the express language of the act, as defined by the natural and ordinary meaning of the words, in order to embrace within them the present demand for such liquidated damages, we might with equal propriety admit the claims of all mail contractors during the time and in the States named in the act for unliquidated damages for other breaches of contracts which may have occurred in a variety of forms in those days of political disorganization, rebellion, and obstruction to the government service throughout the seceding States, and we can hardly conceive that such an interpretation would be seriously pressed.
There is still another difficulty.in the way of the claimant’s recovery.
The appropriation in the act of 1877 was for the payment only for mail service performed in the States named therein, before those States respectively engaged in war against the United States. Had the service, for which the one month’s extra pay was allowed, been actually performed it would have occurred after both Florida and South Carolina had engaged in rebellion by the passage of ordinances of secession, and the allowance for discontinuing it was made thirteen days after * he secession of South Carolina. Thus the claim was.excluded from the benefit of this appropriation.
However meritorious be the present case, the claimant’s remedy is with Congress.
The judgment of the court is that the petition be dismissed, for want of jurisdiction, without prejudice.
Weldon, J., had not taken his seat when this case was heard, and took no part in the decision.