Bichardson, J.,
delivered the opinion of the court:
This case comes to the court under the second section of the Bowman Act (22 Stat. L., 485), by the following letter of transmission :
“It appearing that a claim is pending in this Department in favor of George Campbell, arising out of the discontinuance of mail service on routes Nos. 10411a, 10561, and 10564, in the State of Missouri, on the 18th day of December, 1861, and it appearing that said claim involves controverted questions of law and fact: Now, by virtue of the authority vested in me by the second section of an act entitled ‘An act to afford assistance and relief to Congress and the Executive Departments in the investigation of claims and demands against the’ government,’ approved March 3, 1883, I hereby transmit said claim, with the vouchers, papers, proofs, and documents pertaining thereto, to the Court of Claims of the United States, to the end that the same may there be proceeded in under such rules as the court may adopt.
“Frank Hatton,
'11 Acting Postmaster-General.
“Not. 2, 1883.”
The only defenses suggested to the claim are—
1st. That then history and "public records of the rebellion show that these routes were all in that part of the State in which war raged in 1861-’62, and within the lines of the public enemy, as defined by General Frémont in his proclamation of August 30, 1861.
2d. That as in many cases indemnity was paid to United States mail contractors by the Confederate States government *322 out of money belonging to the United States collected by that government from United States postmasters, this claim may have been so paid.
Neither of these suggestions indicates any defense.
1. As to the first, it is true that war was flagrant at times in part of the territory through which these mail routes passed, but, as was said by the Supreme Court in Reeside v. The United States (8 Wall., 38, and 7 C.Cls. R., 89) as to the postal service among the people who were in rebellion:
“The policy of the government was to conciliate the people, and to separate-them, if possible, from the leaders; and one of the means used for this purpose was to continue these mail and postal accommodations so long as any hope existed of preventing the rebellion or continuing- peaceful relations.”
It was for the Postmaster-General to determine to what extent he would continue the service among the people who had taken arms against the government, and contractors had no option in the' matter.
The claimant had a right to the full benefit of the whole term of his contracts, if he were willing to perform the same, unless and until the Postmaster-General elected to discontinue them, in which case he became entitled to the one month’s extra pay according to a provision in each of the contracts set forth in the first finding. It was so decided by the Supreme Court in a similar case; that of Reeside above referred to.
2. As to the second suggestion there is no fact found, and no presumption of law or fact arises from which it is made to appear that the claimant was paid by the Confederate States.
There was an act of the Confederate Congress providing that moneys received from United States postmasters should be kept separate and paid pro rata on “ claims for postal service which accrued before the postmas ter-general took charge of the postal service in the States respectively comprising this Confederacy, as may hereafter be provided.” But that act related only to postal service within the Confederate States and did not apply to Missouri, which never attempted to sece,de from the Union. (Hukill’s Case, 16 C. Cls. R., 562; George’s Case, 18 C. Cls. R., 432.)
The defendants are indebted to the claimant in the sum of $110.34, and the clerk will certify to the Postmaster-General a copy of these findings of facts, conclusions of law, and the opinion of the court.