Nott, J.,
delivered the opinion of the court:
The Deficiency Appropriation Act, 18th May, 1872 (17 Stat. L., 122, 134, § 5), contained these provisions:
“Sec. 5. That the Secretary of the Treasury be, and he is hereby, authorized and directed to pay to the lawful owners, or their legal representatives, of all cotton seized after the thir- *313 tietb day of June, eighteen hundred and sixty-five, by the agents of the Government unlawfully and in violation of their instructions, the net proceeds, without interest, of the sales of said cotton actually paid into the Treasury of the United States; Provided, That the receipt thereof shall be taken and received in full satisfaction of all claims against the United States for or on account of the seizure of said cotton ; and a sufficient sum for such payment is hereby appropriated out of any money in the Treasury not otherwise appropriated; And provided further, That the foregoing provisions shall not apply to any claim now pending before the Court of Claims, nor to any claim not filed in the Treasury Department within six months after the passage of this act; and the sum of twenty thousand dollars is hereby appropriated for the payment of the necessary expenses of defending the United States in respect to claims for said proceeds, to be expended under the direction of the Secretary of the Treasury. ”
Under this statute the claimant presented his claim for 122 bales of cotton to the Secretary of the Treasury. On the 8th March, 1875, the Secretary rejected the claim. In January, 1884, the claimant presented it to Congress, and the Committee on Claims of the Senate transmitted it to this court.
On the part of the defendents, it is maintained that the claim was one of those which were barred by law when the Bowman Act was passed, and consequently is excluded from the jurisdiction of the court. This alleged bar, it is maintained, is twofold: First, because the action of the Secretary of the Treasury in regard to such claims was final; and second, because the claim was barred by the operation of the Abandoned or Captured Property Act (12 Stat, L., 820).
On the part of the claimant it is argued, that neither of the causes alleged constituted a bar; that acceptance of payment under the Deficiency Act alone would conclude a party from again pressing his, demand; and that the claim did not come within the operation of the Abandoned or Captured Property Act because of the disloyalty of the owner.
It appears by the petition that the claimant’s cotton, which is the subject-matter of the suit, was seized in Texas in July, 1865. At that time and place hostilities had ceased, but the country was still held by military force, and it was more than a year before the final proclamation of the President declared the rebellion in the State of Texas at an end. It is alleged, too, that the proceeds of the cotton reached the Treasury. The claim was therefore primarily one of which this court had *314 jurisdiction; and one which, apart from the operation of the Deficiency Act, 1872, was barred in 1883 when the Bowman Act became a law.
The deficiency act, however, opened a new door of jurisdiction ; and if a jurisdiction existed in which the claim could be adjudicated when the Bowman Act was passed, it was 'not barred within the intent of that statute.
This new jurisdiction may or may not have been exclusive. We will examine the question of a bar in each of these alternatives.
1. If the jurisdiction of the Secretary of the Treasury in regard to these claims was intended to be exclusive, then there was necessarily attached to it the judicial element of finality, and his decision was as conclusive as the award of an arbitrator or the judgment of a special tribunal. If it had been favorable to the claimant, an action could have been brought upon it, just as actions have been brought upon the awards of the Commissioner of Internal Revenue, or on the decrees of this court in other captured property cases (Brown’s Case 6 C. Cls. R., 175, affirmed in O'Grady Case, 22 Wall. R., 641). And if the decision was adverse to a. claimant it was equally final, and consequently a bar to a new suit or proceeding upon the same demand. On the 8th March, 1875, the Secretary of the Treasury rendered such a decision. While he remained in office it was within his power and discretion to reopen the case and reverse his own judgment. But he left the office without having 'done so, and the claimant acknowledged the finality of hisactiou, so far as the Treasury Department was concerned, by carrying his claim to Congress and seeking relief there. It seems clear to the court that if the jurisdiction of the Secretary of the Treasury was exclusive over this class of claims his decision was final, and bars the claim within the intent of the Bowman Act.
2. If the jurisdiction of the Secretary was not exclusive, and he was acting as the claimant insists he was, ministerially and not judicially, the case is remarkably like the ante helium mail contract cases which first came before the court in Hukill’s Case (16 C. Cls. R., 562). There, as here, a cause of action had existed which had become barred. In 1877 Congress made a specific appropriation of $375,000 to pay these mail contractors for services in the seceded States remaining unpaid when those *315 States engaged, in tbe civil war (Sundry Civil Appropriation Act, 3d March, 1877, 19 Stat. L., 344, 362). The Secretary of the Treasury did not administer the statute, and the appropriation lapsed.
When the claims came into this court, the counsel for the Government raised the question of jurisdiction, that there was no promise to pay such claims in full, but merely the appropriation of a specific amount to be distributed by the Secretary of the Treasury, it might be pro rata, and that this court was not authorized to review his action or to distribute the fund in his stead. But it was held that by virtue of the appropriation the claims became thenceforth an acknowledged right against the United States “ which this court is bound to take cognizance of under its general power to hear and determine all claims founded upon any law of Congress.” That decision was repeated in a number of cases (see Blount, 21 C. Cls. R., 274, where the decisions are reviewed), and while not affirmed, is not reversed in the recent case of The Selma, Rome & Dalton R. R. (139. U. S. R. 560.)
If, then, the Appropriation Act of 1872 providing for the payment of these cotton claims was an acknowledgment by Congress of a legal right, notwithstanding the jurisdictional limitation of the Abandoned or Captured Property Act, and if the intended action of the Secretary of the Treasury was ministerial, and his distribution of the fund not a matter of exclusive jurisdiction (as is maintained by the claimant), the conclusion seems inevitable that the claim would come within the general jurisdiction of the court, and hence within the operation of the statute of limitations (Rev. Stat., § 1069). In the Twenty Per Cent. Cases (9 C. Cls. R, 302, 314) it was held that where an action is founded upon a statutory right, the statute of limitations begins to run from the time when the appropriation for the payment of the claim first becomes available, and that decision was affirmed by the Supreme Court. (9 C. Cls. R., 104; 20 Wall. R., 179.)
From either point of view, then, it seems unquestionable that the claim was barred when the Bowman Act became a law, and consequently was excluded from the jurisdiction of the court.
The order of the court is that the case be* dismissed for want of jurisdiction and so reported to Congress.