Nott, J.,
delivered the opinion of the court:
This is an action brought to recover $27,333 41 upon certain contracts for the building and machinery of the branch mint in San Francisco. The case was once tried before three judges, but no judgment was rendered by reason of the disagreement of the. court upon the amount of damages to be awarded. It now comes before us on the following facts:
In the year 1853 Mr. Guthrie, Secretary of the Treasury, invited proposals for the construction of a branch mint at San Francisco, to which one William A. Barton, among others, responded. His bid was deemed the best and his proposals were accepted. These proposals with their acceptance were then, with the, assent of the Secretary, transferred to the claimant. Two contracts were subsequently executed, which departed somewhat from the tenor and provisions of the proposals; but the agreement to depart was mutual and no question was ever raised as to its legality, and the mint upon its completion was accepted fey the government. Shortly after the execution of the contracts the Secretary appointed two commissioners to superintend the work, and Mr. George Eckfeldt, an experienced machinist in the mint at Philadelphia, was sent out as a " commissioner for the building of-machinery.” During the progress of the work various alterations and additions were ordered and allowed by Mr. Eckfeldt and the commissioner, and out of these alterations and additions this suit arises. It involves chiefly matters of fact and .questions pertaining only to the construction of this particular contract, but there is one question of general importance also involved, which will be first considered.
The first section of the act of July 3, 1852, (10 Stat. L., p. 11,) provides “ that a branch of the mint of the United States be established in California” “for the coinage of gold and silver.” The tenth section limits the expenditures as follows, viz: “ That before the Secretary of the Treasury shall procure or erect the buildings provided for in the second section of this act, or commence operations under any of the provisions of the same, at San Francisco, State of California, it shall first be his duty to make a contract or contracts for the erection of said buildings, and procuring the machinery necessary for the opera *151 tions of said mint, at a sum or sums which shall not, in the whole, exceed the sum of $300,000.” The original or written eontraet between the parties contemplated only the coinage of gold. It was not necessary that the contract should embrace both. The end might be obtained by one or by many contracts, only they would be subject to the limitation of the statute. This .limitation in clear terms bound the contracts for the coinage of gold and of silver — for the coinage of both or of either.
The aggregate consideration of the formal or written contracts of April 15 and July 6 was $283,809 10. By a subsequent agreement with the director of the mint the claimant agreed to furnish additional apparatus at the stipulated price of $14,000, whieh for the present we assume to be for the coinage of silver. During the progress of the work a number of alterations were made by the direction of the government agent, and these alterations the court find to be extra work of the value of $8,680, so that the moneys which the claimant has received, ($297,929 10,) with those which he has expended to the use of the government in the cost of the alterations, ($8,680,) amount in the aggregate to $306,609 10, or $6,609 10 more than the amount to which the expenditures were limited by Congress. The chief legal question in the case is, “ can the claimant recover for this excess ?”
The difficulty is not one of appropriation. Contracts in excess of an appropriation are held void ordinarily to that extent. That difficulty, however, so far as it relates to cases in this court, Congress has bridged by the general appropriation to meet its judgments. If this were not so we should be constantly stopped by that obstacle. The Court of Claims was established to meet those cases where a man came before Congress and said, “ I have expended money for, or rendered service to, the government, for which I could recover in a court of justice if the party with whom I dealt were a citizen or a body corporate. I ask a like remedy and a like liability on the part of the government.” Hence, there are claims properly and legally rejected by the departments for want of appropriations, yet properly and legally sustained here by virtue of the general appropriation to meet our judgments.
The proviso in this statute was not an appropriation, but a condition or limitation. It says, in effect: “ The cost of the branch mint in California, with all its appurtenances and apparatus, shall not exceed $300,000; and if it should, the government shall not be liable for the excess.” To all intents and purposes the government wrote this limitation upon the face of the contract. Is there any way by which the claimant can escape from it ?
*152 The rule and principle adopted by this court for the administration of justice between a claimant and the government is simply to give that measure of relief which the law would award were the action between man and man. The court never gives greater and never gives discretionary relief. Sometimes this rule is modified by holding parties to greater care and vigilance than if they had dealt with private persons ; but the liability of the government in these actions on contract, express or implied, has been held generally to be simply that which the claimant might pursue against another defendant in another tribunal.
What, then, can the claimant here recover, if the government be re- • garded simply as the principal and its officers as its agents ? At the beginning of the transaction the principal gave to the contractor the plainest and the clearest notice that all of its expenditures and liabilities should not exceed a fixed and certain sum. The statute became to the claimant notice in law and in fact that the expenditures could not be'earried beyond certain bounds; and it was, moreover, by direct reference, stamped upon and made a part of the contract which is the foundation of the claimant’s rights. This condition the law-making power never relinquished, nor by any act waived, nor at any time authorized the executive officers to exceed. The law-making power was here the government, and the executive officers were its agents, and no acts of theirs could bind their principal for a greater sum than had been consented to and agreed upon.
Yiewed as a transaction between private persons, the claimant must be deemed to have gone beyond the fixed limit of his agreement at his own risk, trusting for recompense to the liberality of the party with whom he dealt — a liberality which courts of justice cannot enforce. Yiewed as a transaction between a contractor and the government, the claimant must be held to abide by the conditions which the statute imposed, both upon him and upon the officers who directed his expenditures. Were such statutory provisions to be disregarded, and were judgment to be given whenever a claimant shall prove that he has done work or rendered service under the direction of an executive officer, it would enable the executive branch of the government, with the aid of this court, to annul a law of Congress, and to throw down any limitation which Congress might impose upon the cost of our public works.
It remains to speak of the items which make up the claimant’s demand. Subsequent to the date of the written contracts for the erection of the branch mint, but before the work was begun, the municipal *153 authorities of Sau Francisco raised the grade of the street in front of the building which had been procured for the mint. The agents of the government thereupon requested the claimant to raise the building so as to conform to the new grade. This alteration was not necessary to the performance of his contract, and was clearly a departure from its terms. He was not compelled by the contract or by the necessities of the case to make the alteration, but the alteration was a benefit to the government, and properly made at its request. We therefore think that for this, and for the expenditures incidental thereto, he should recover.
There was also an item of expenditure in planking the re-graded street, which we think does not come within the contract, and henee is not affected by the limitation of the act. The improvement of the street was not a part of the mint, but was an improvement to the property already sold to the government, for which it should be held liable, irrespective of the proviso that the contracts for the erection of the mint should not exceed $300,000. It was money paid to the use of the defendants, for which the claimant may recover as upon a separate and distinct contract.
The claimant also seeks to recover for certain alterations and additions in the building and of the apparatus, and for the erection of an independent department termed the “ separating department.” The right to recover here depends upon the construction to be given to the contract, and we therefore will consider these items as' one.
The act of Congress authorized the erection of a branch mint, as has been said, “for the coinage of gold and silverThe formal contract under it was for “ a suitable building, and to furnish all the requisite machinery, fixtures, and tools essential for a branch mint in conformity to the act of Congress.” The building was to be “ erected and finished throughout agreeably to the plans submitted by the party of the second part;” and the machinery was to be “ for a mint capable of coining thirty millions of gold per annum.” A “ detailed specification of this machinery ” was to accompany the contract; but it was expressly “agreed * * * that if there should lack in the schedule of necessary and proper machinery implements or furniture for a branch mint of the capacity to coin thirty millions of gold, fyc., that the party of the second part will also furnish them ” It was, we think, the intent and meaning of this contract that the contractor should do everything and furnish everything to render the mint complete; and, therefore, that nothing could be additional which was essential to the coinage of thirty millions of gold. But, on the other *154 hand, the contract did not provide for alterations in the details agreed upon; and hence, where such were undertaken at the request of the defendants, and were a cause of extra expense to the contractor, they form a just cause of action here.
Against this it is insisted by the claimant that the “ separating department ” was something distinct and different from a mint, and was not included in the provision for “ coining thirty millions of gold,” which coinage may be, and was expected to be, made from gold already refined by private workers. To sustain this the claimant produces the special contract made with the director of the mint subsequent to the two formal contracts, which special contract includes apparatus for the separating department. He also seeks to establish this construction directly by parol evidence. But whatever may have been the opinion of the officers charged with the superintendence of the work, it cannot materially affect the legal construction to be given to the contract. The evidence shows that Californian gold is not of standard fineness for coining, and we think that when Congress established a branch mint in California, it was the intent of Congress that it should contain everything essential to the coinage of Galfornian gold. We think also that when the claimant undertook and agreed to erect “ a suitable building” and to furnish “ALL requisite machinery, fixtures, and tools essential for a branch mint in conformity to the act of Congress,” and to furnish this apparatus whether contained in the schedule or not, he thereby undertook and agreed to carry out and give full effect to the intent of Congress, and that the limited meaning con tended for by him cannpt be allowed in his case.
The damages now to be given, therefore, must be restricted to the difference between the sum already paid to the claimant, viz., $297,929 10, and the sum to which the expenditures for the branch mint were limited by Congress, viz., $300,000. That difference' is only $2,070 90 ; whereas the amount the claimant would be entitled to recover were it not for the provision in the tenth section of the act, would be $8,955.
We have come to this conclusion with extreme reluctance, and after a prolonged consideration of the case; for the claimant appears to have acted with liberality in everything that the officers of the government requested, and the loss to which he is subjected was caused by a misunderstanding on their part both of the contract and their powers and duties under the act of Congress.
*155 The judgment of the court is that the claimant recover the sum of $2,070 90, and the further sum of $275, amounting in the aggregate to the sum of $2,345 90.
Luring, J., dissented.