Nott, J.,
delivered the opinion of the court:
The Sundry civil appropriation Act 3d March, 1877 (19 Stat. L., pp. 314, 362, ch. 105), appropriates the sum of $375,000 for the purpose of paying “the amount due to mail contractors for mail service performed” in certain designated States. The States so designated are those which seceded in 1860-1861, and likewise the States of Kentucky, Missouri, and West Virginia. The mail service so to be paid for is limited to that performed “in the'years 1859, 1860, and 1861, and before said States respectively engaged in Avar against the United States”; and “ claims which have been paid by the Confederate Government^” the act says, “ shall not be paid again.”
Of course such a statute is passed Avith reference to facts well known to Congress. It ivas well knoAvn that the States of Kentucky, Missouri, and West Virginia never passed ordinances of secession, that they never “ engaged in war against the United States,” and that they Avere not members of the Confederate States, or a portion of the “ Confederate States Government.” But it was also known to Congress that their territory at times had been a part of the theater of Avar, and that there were mail contractors in those States avIio, for reasons more or less connected with the Avar, had never been paid the full amount due them for mail-transportation service. Of course, if there were such contractors in those three States, there was no reason why Congress should do less justice to them than to those in the seceded States, and, when legislating upon the subject, it Avas natural and convenient that they should be provided for by the same statute; biit it does not folloiv that provisions applicable to contractors within the seceded States are to be taken as applicable to those in Kentucky, Missouri, and West Virginia. The statute might have been more clearly expressed; yet the manifest intent is that mail contractors in those three States shall be paid the amount due to them for mail service performed in 1859, 1860, 186Í, while in the case of the seceded States there- *59 is practically a further limitation imposed which restricts the relief to service in those years, rendered “ before said States respectively engaged in war against the United States.”
In the case of Hukill (16 C. Cls. R., 562) the court, when interpreting this statute, reached two general conclusions: 1st, that the court has jurisdiction of cases arising under it; and, 2d, that the provision declaring that those claims “ which have been paid by the Confederate States Government shall not be paid again,” when interpreted in connection with certain Confederate statutes directing payment of the same, casts upon the claimant the burden of showing that his claim was not paid. We see no reason now for doubting the correctness of either conclusion; but the latter is applicable to cases like Hukill, where the route was within a seceded State, and is not applicable to a case like the claimant’s, where the service was rendered in the State of Kentucky. Neither the reasoning of the court nor the language of the Confederate statutes extends to the case of a contractor whose route and service were both exterritorial to the power and authority of the Confederate Government.
It was said on the argument that the decision in the Ludington Case (15 C. Cls. R., 453) decides this; and reference was made to the second section of the AetlGth June, 1874 (1 Supplmt. R. S., p. 37), and to the fourth section of the Act Itíh June, 1878 (Ibid., p. 350), as being substantially the same in effect, the former governing the Ludington Case and the latter this. But the distinction between the two cases lies.behind the operation of these statutory provisions, and is, we think, a broad One.
In Ludington’s Case the executive officers were without authority to pay the class of claims to which it belonged, and their duty was limited t'o reporting the facts connected with them to Congress, there to await legislative action. The claimant founded his suit on such a report, upon the theory that it was an award. The court held that the provision of the Act 16th June, 1878 (1 Supplmt. R. S., p: 37, § 2), requiring the consideration of Congress upon the reports of the officers charged with the examination of such claims, took away whatever character of an award such reports previously might have had. In this case Congress validated a class of claims, appropriated money to satisfy them, and directed the Secretary of the Treasury to examine and pay them. The Secretary did not examine them, and this suit is not founded upon any report of his. The *60 fact that he did not pay'the claims while the appropriation remained under his control did not extinguish the parties’ rights j and the general statutory provision in the Act 1878 (1 Sapplmt. R,. S., p. 350), directing the accounting officers to continue to examine claims “under appropriations, the balance of which may have been exhausted or carried to the surplus fund,” and directing the Secretary to report the amount due to each claimant to the Speaker of the Nouse, to be laid before Congress “for consideration,” does not affect the causes of action, nor change their character, nor remove them from the jurisdiction of this court. In a word, the decision of the court in Ludington’s Case was that the alleged cause of action had never become complete; and the ruling of the court in this case is that a perfected right of action is not taken away by the lapsing of an appropriation under provisions of law which are intended to regulate the power and duties of the accounting officers.
The judgment of the court is that the claimant recover of the defendants the sum of $144.44.