Williams, Judge,
delivered the opinion of the court:
The facts in this case are stated fully by the court in its findings of fact, and it is not necessary that they be restated at length. Summarized briefly, these facts are:
Plaintiff, a member of the New York bar, was employed by the Alien Property Custodian in 1918, in his capacity as a lawyer, to investigate and report the financial transactions between John Simon, of the State, of New York, and one Heinrich F. Albert, a resident of Germany, with a view of enforcing a claim of the United States to a sum of money amounting to about $350,000, deposited in the American Exchange National Bank of New York in the name of Simon, but which the Alien Property Custodian believed, in fact, the property of Albert, an alien enemy.
*698 In pursuance of his employment, plaintiff made an exhaustive investigation of the relations of Simon and Albert, which occupied his time almost exclusively until October 30,1918, on which date he made a report to the Alien Property Custodian, which report showed that Simon owed a very large sum of money to Albert, and that the funds in the American Exchange National- Bank were in fact the property of Albert.
The Alien Property Custodian approved plaintiff’s report and made demand on the American Exchange National Bank for the money. The bank brought a suit of inter-pleader against the Alien Property Custodian and Simon in the district court of New York. Plaintiff, at the request of - the Alien Property Custodian, acted as special counsel and assisted the Department of Justice in the preparation for trial, and in the trial, of the case in the district court, and in the Circuit Court of Appeals.
The fact of plaintiff’s employment is not disputed, neither is the authority of the Alien Property Custodian to make the employment questioned by the defendant.
The defense raises the issue of the statute of limitations. The court has disposed of that question in its findings of fact, and it is not necessary to discuss it here. His services continued until December 5, 1921, at which time his claim accrued. Suit was instituted November 19, 1927, within six years.
The defendant, while admitting the employment of the plaintiff, and that he rendered the services as stated, contends that he should not recover because:
:Plaintiff was required to look to the Albert trust fund No. 12003 for any compensation that he might receive in this matter and that the Alien Property Custodian was authorized to fix the amount of the same; that plaintiff’s refusal to accept the amount fixed while there was such a fund in the hands of the Alien Property Custodian between March 29, 1923, and November 28, 1923, thereafter barred him from compensation from the Government as a matter of right; and that the decree of November 28, 1923, returning the fund and any accretions thereto to Simon, removed from the *699 Alien Property Custodian any right to disburse same to any other than to Simon.”
The argument that the Alien Property Custodian was authorized to fix plaintiff’s compensation, and that plaintiff was limited to the amount so fixed, is based on the defendant’s construction of section 6 of the trading-with-the-enemy act (40 Stat. 411, chap. 106), and Executive Order 2744 of President Wilson issued October 29, 1917, authorizing and empowering the Alien Property Custodian to exercise certain powers vested in the President by section 6 of the trading-with-the-enemy act.
The pertinent part of section 6 reads:
“ The President may further employ in the District of Columbia and elsewhere and fix the compensation of such clerks, attorneys, investigators, accountants, and other employees as he may find necessary for the due administration of the provisions of this act: Provided, That such clerks, investigators, accountants, and other employees shall be appointed from lists of eligibles to be supplied by the Civil Service Commission and in accordance with the civil service law.”
Executive Order 2744 reads:
“ I hereby authorize and empower the Alien Property Custodian to employ and appoint in the manner provided in the trading-with-lhe-enemy act in the District of Columbia and elsewhere, and to fix the compensation of such clerks, attorneys, investigators, accountants, and other employees as he may find necessary for the due administration of powers conferred on such Alien Property Custodian by law or by any order of the President heretofore or hereafter made. * * * ”
It seems quite evident that the appointment, employment, and fixing salaries of the persons enumerated in section 6, of the trading-with-the-enemy act, and Executive Order 2744 apply to those who make up the regular personnel of the Alien Property Custodian’s office. They take an oath of office, go upon the regular pay roll of the Government, and are paid from funds carried in appropriation bills. They draw monthly or yearly salaries which the Alien Property i Custodian is authorized to fix, and naturally they are limited in their compensation to the salary so fixed.
*700 Plaintiff does not come within that class of employees. He was not on the regular force of the Alien Property Custodian’s office. He did not take the oath of office and he drew no salary.
He was employed in his legal capacity, by the Alien Property Custodian, for a particular and important service. The compensation he was to receive was not fixed at the time of his employment. Obviously it could not have been fixed at the time of employment because it could not then be foreseen what the extent and character of his services would be. The Alien Property Custodian believed that a large sum of money in the American Exchange National Bank of New York deposited in the name of John Simon was in fact the property of one Heinrich F. Albert, an alien enemy. Plaintiff was employed to take charge of the matter, go into the facts, reach whatever legal conclusions he thought were correct, “ with a view especially of enforcing the claim of the United States to this money.” As a result of plaintiff’s investigation the Alien Property Custodian instituted proceedings to recover the money and finally, after a long litigation, the money was turned over to him by a decree of the Supreme Court It will be seen from this that plaintiff’s services were not those of an ordinary employee of the Alien Property Custodian.
Executive Order 2183, provides:
“(b) The Alien Property Custodian may pay all reasonable proper expenses which may be incurred in or about securing possession or control of money or other property and in or about collecting dividends, interest, and other income therefrom, and in otherwise protecting and administering the same.' So far as may be, all such expenses shall be paid out of, and in any event recorded as a charge against, the estate to which such money or other property belongs.”
Under the powers here conferred upon the Alien Property Custodian he had authority to employ plaintiff for the particular service rendered in this case, also authority to pay him for such service.
He had the authority to “ pay all reasonable proper expenses which may be incurred in or about securing possession of monejr or other property,” etc. The service rendered by *701 plaintiff was for the purpose of “ securing possession and control of money or other property,” and largely through the work performed by him the Alien Property Custodian did secure possession and control of a very large sum of money. The only limitation placed upon the Alien Property Custodian for all reasonable and proper expenses in matters of this kind is “ that so far as may be, all such expenses shall be paid out of * * * the estate to which such money or property belongs.”
It was not the fault of plaintiff that he was not paid during the time the Albert Trust Fund was in the possession and control of the Alien Property Custodian between March 29,1923, and November, 1923. His claim unadjusted and unpaid was during all that time on file with the Alien Property Custodian. Plaintiff had repeatedly demanded its payment. It was the duty of the Alien Property Custodian, if he could not agree with the plaintiff on the value of his services, to have the matter adjusted by the court before a decree was entered in the reclamation suit, and while the funds from which it is urged plaintiff could only be paid were still in his possession. He permitted these funds to be decreed out of his hands without adjusting plaintiff’s claim himself, or having it adjusted by the court on the final disposition of the Albert Trust Fund.
From the termination of plaintiff’s services to the Alien Property Custodian, December 5,1921,. up to and until plaintiff filed his suit, November 19, 1927, there was in the possession of the Alien Property Custodian a fund varying from time to time in amount, but always containing several hundred thousand dollars, accumulated by deducting from moneys returned to various claimants a certain per cent to cover costs of administration of trusts held by the Alien Property Custodian. There was ample authority for the payment of plaintiff’s bill out of this fund.
On July 14, 1925, there was an amount of accumulated interest, $20,204.20, in the Albert Trust Fund which Alien Property Custodian Miller on that day returned to Simon. Plaintiff could have legally been paid out of that fund.
There was no time after plaintiff submitted his first bill, in December, 1919, for $10,137.69 for services and disburse *702 ments to date, up to November 19, 1927, when plaintiff’s suit was filed that there were not funds in the possession and control of the Alien Property Custodian, in one or another of the funds above mentioned, out of which he could have properly and legally paid plaintiff.
Defendant admits the Alien Property Custodian could have paid plaintiff out of the Albert Trust Fund, in his hands between March 29, 1923, and November 28, 1923, but insists he could not be paid from any other fund and that he was bound to accept such sum for his services as the Alien Property Custodian might fix, and that “ plaintiff’s refusal to accept the amount fixed while there was such a fund in the hands of the Alien Property Custodian, thereafter barred him from compensation from the Government, as a matter of right.”
In the opinion of the court plaintiff was not required to accept the amount fixed by the Alien Property Custodian for his compensation if the amount so fixed was inadequate, and his refusal to accept the amount fixed did not bar him from compensation from the Government as a matter of right.
The Alien Property Custodian had the authority to employ plaintiff to perform the services rendered; and plaintiff’s compensation not having been fixed or agreed upon at the time of his employment, he is entitled to be paid what his services were reasonably worth. The failure and refusal of the Alien Property Custodian to adjust, or cause, to be adjusted, plaintiff’s claim at such time as he, admittedly, had in his possession and control funds from which it could be paid, and permitting such funds to pass out of his hands with plaintiff’s claim unpaid, does not relieve the defendant from liability to compensate plaintiff for his services.
Plaintiff’s employment by the Alien Property Custodian, as has been said before, was authorized by law. He rendered the services for which he was employed.
The court in its findings of fact has determined such services to be reasonably worth $13,500, and that plaintiff in connection with the rendering of such services incurred necessary expenses to the amount of $180.24.
*703 In tbe opinion of the court, therefore, plaintiff is entitled to judgment against the defendant for said amounts, and it is so ordered.
LittletoN, Judge; GeeeN, Judge; Gkaham, Judge; and Booth, Chief Justice, concur.