Richardson, J.,
delivered the opinion of the court:
We are all of opinion that the claimants are not entitled to recover in this action, and that judgment must be entered for the defendants, although there is some difference in the views of the judges by which that opinion is reached.
The original act of Congress, August 4, 1854, (10 Sbat. L., 571,) authorizing the Secretary of the Treasury to cause to be constructed a marine hospital at New Orleans, expressly limited the cost to $248,000. This was followed by another, Act August 18, 1856, (11 id., 85,) making a further appropriation of $151,659.20 for the completion of the hospital. The effect of this latter act was to raise the limit of the cost to $390,659.20,, and that was the extent of the authority of the Secretary of the Treasury either to expend money in erecting a building, or to make a contract for expenditures on the same which would be binding on the defendants.
The contract upon which this action is brought was made under the authority of these two acts of Congress, and the claimants, as well as the Secretary of the Treasury, knew, or were bound to know, the terms of the law under which they were acting, and the contract entered into by them must be held to have been made with reference to all the provisions and limitations of the statutes. It was not necessary, in order to make them obligatory on the parties, to set them forth in the agreement, any more than it was necessary to set forth or refer to the law giving power to the Secretary of the Treasury to cause the hospital to be'built. The laws of Congress not in conflict with the Constitution are supreme, and cannot be set aside or overridden by the agreements or omissions of public officers.
The limitation of the cost of the hospital was an important and material part of the laws authorizing its erection; and, as was well said by this court in a similar case, where a contract was made to erect a building the cost of which was not to exceed the amount specified, “to all intents and purposes the Government wrote this limitation upon the face of the contract,” (Joseph Curtis v. The United States, 2 C. Cls. R., 151,) and it must be so construed.
The contract provided that the claimant should complete the entire building according to the plans and specifications referred to therein for the sum of $360,000, which was within the *158 limits of the appropriation; but it also provided that the Secretary should have full power to alter, change, or amend the plans and specifications in any way that he deemed conducive to the best interest of the United States, or to the earliest and best completion of the hospital; and that for any alterations, additions, or curtailments ordered by the Secretary, which might affect the cost of construction either more or less, an estimate should be made, in the manner agreed upon, of additional or lessened cost, and the amount of such estimate should be added to or taken from the price of $360,000.
Thus by the very terms of the written contract the Secretary of the Treasury had the right to vary the plans and specifications, enlarging or diminishing the cost of construction, subject only to the express limitation of the law that the whole expenditure should hot exceed the sum of $399,659.20. The Secretary availed himself of the power thus reserved to him, and did materially change the specifications, and make alterations and additions, so as to expend $95,591.57 out of the appropriations, for work, labor, and materials not included in the original specifications covered by the contract-price of $360,000, and in doing so exhausted the appropriation and reached the limit of the law and of his authority before the full amount of $360,000 had been expended upon the work and materials set forth in the original plans and specifications, by the sum of $44,854.26, and yet the building was not completed. Under these circumstances, the Secretary having no authority to make any further payments, and the claimants being unwilling to continue the work and wait for the payment thereof until Congress should make further appropriations for the purpose, the work was brought to a close, and the building in its unfinished condition was thereupon turned over to the officers of the Government. No further appropriation was ever made by Congress, and no more work has ever been done on the building, and since this action was brought the property has been sold and the title thereto has passed from the defendants.
The claimants now seek damages for not being allowed to go on and do the unfinished part of the work mentioned in the original specifications, which remained to be done in order to complete the building, to the extent of said $44,854.26. They seek to charge the United States with the expenditure of that amount, or damages for not expending it, over and above the ex *159 press limit wbicb Congress fixed as the cost of tlie building, notwithstanding that they have received the whole of the appropriations made in the act fixing the limitation, paid to them for work and materials done under contract to which that limitation attached.
Neither the defendants nor the Secretary of the Treasury have violated any of the terms of the contract. Congress, which alone has the power to appropriate money, never agreed, nor authorized any agreement to be made, to appropriate any money for this building, other than that specified in the two acts referred to. The Secretary of the Treasury did not contract to expend any sum beyond the congressional limitation, and that sum he has expended in accordance with the provisions of the contract, and has broken none of its terms. The extra work, alterations, and additions were contemplated by the parties to the contract as likely to be required, and were expressly provided for therein. The Secretary had as much right to so alter the specifications as to expend part or the whole of the appropriation upon additions and alterations as he had to apply any part of it to carrying out the xilans and specifications specifically referred to. He did not divert the money, or any part of it, from the work provided for in the contract, but expended the whole in exact accordance with the power and authority therein reserved to him. Nor did he employ any parties other than the claimants, with whom he had contracted, to do any of the work.
Had the Secretary of the Treasury unlawfully used for other purposes some of the money appropriated for this hospital, or improperly used it in the employment of parties other than the claimants to do the work called for by their contract, the claimants would have presented here quite a different case from the one now under consideration. But the claimants did all the work that was ever ordered by the Secretary, and they did the same under and by virtue of the obligations of the contract, and subject to its limitations. For that work they have been fully paid, and have received not only the whole amount of the appropriation, the extreme limit which the contract under the law could call for, but they have received the sum of $11,077.81 in addition, out of another appropriation made by Congress subsequently to the time of the execution of the contract, and intrusted to the Secretary of the Treasury, to be expended by him for filling up site, grading, introducing gas and water pipes and *160 fixtures, and fencing, work not provided for by the contract, and for otherwise completing the hospital. Thus the claimants, having received, for work done under the contract and according to its express terms, more money than the full amount of the limit to which it was by the acts of Congress made subject, have no cause to complain.
These are the views of a majority of the court, and they are decisive of the case on its merit's.
But even if the defendants ever were under obligations to allow the claimants to go on and finish the building after the appropriations were exhausted, and the contract did not come to an end by the limitations stamped upon it by the law, two of the court are of opinion that there was no breach by the defendants within the six years immediately preceding the time of 1 ling the petition in this action, and the Assistant Attorney-General having filed a plea of the statute of limitations, that plea would be a bar to the claimants’ recovery of damages. In July, I860, all work under the contract was brought to a close by order of the Secretary, of the Treasury, on account of the exhaustion of the appropriation, and the unfinished building was voluntarily turned over to the Treasury Department by the claimants. At the end of the same month the whole amount of money held by the Treasury Department, under the provision of the contractt that 10 per cent, of the value of the work done and materials ' furnished should be retained until the completion of the work, was paid over .to the claimants. Between that time and February 22,1801, the claimants notified the Secretary of the Treasury of their readiness, ability, and desire to complete the contract, and asked to be relieved from any obligations under it, or else allowed .to go on with the work.
In November, 1862, the claimants addressed the Secretary in writing, asking him whether the time had not, in the opinion of the Department, arrived for taking the proper steps to cancel the contract or finally settle with the contractors. In July, 1863, after repeated requests from the claimants, the Secretary of the Treasury had the accounts under the contracts examined and restated, and paid to the claimants the balance found due them for work and materials, or' for extra work, to the amount of $19,512.29, and the claimants receipted therefor in full for such work and materials. From that time to the time of filing the petition in this case, a period of more than nine years, the claim *161 ants never offered to go on with the work, and never called upon the defendants in relation to the matter, and daring that long period of time the defendants did no act which can be construed into a breach of the contract. The only breach which the petition sets forth in any jiroper form, if that be a breach, is the stopping of the work by the Secretary of the Treasury, in 1860, more than twelve years before action brought, and it is with reference to that distant time and that alleged breach that the damages in this case are claimed and proved. The petition does set forth, it is true, that the claimants had waited until the close of the war and for a reasonable time afterward for the defendants to take such action as would permit them to complete their contract,-and that the long delay of the defendants amounts to an abandonment thereof. This of itself, without any allegations that during the time the claimants demanded a fulfillment of the contract by the defendants, or an offer on their own part of readiness to go on with the work, would not constitute a new breach or keep alive an earlier one and protect it against the statute of limitations. This delay, acquiesced in by both parties, is not a breach of contract by either.
One of the court holds, in his own language, which he has furnished to me, as follows: “Where a general power is given ',o the head of a Department to make contracts for it, it may include as its incident the power to discharge such contracts, for that is involved in the general management of the subjects committed’ to the officer. But, in this case, the only power given is specific, and it is created and limited in the acts of Congress of 1854 and 1856. These authorize the Secretary to make a contract for the particular purpose, specified, and they do not in terms, nor by any necessary implication, authorize him to discharge it; and grants of powers are not to.be extended, beyond their plain purpose. The power, therefore, to discharge the contracts remained iu Congress to be exercised by an act of Congress. If this is so, there was no breach of the contract till the building was sold under the act o.f Congress, March, 1873, and the United States had thus disabled themselves from completing the contract. And as the petition was filed in January, 1873, the cause of action had not arisen when the petition was filed.”
All these different views lead to .the same result as to this action, that .the claimants cannot maintain their suit, ,and that their petition must be dismissed.