LEAVITT, Consul, *v.* UNITED STATES.

(*District Court, S. D. New York.* March 29, 1888.)

1. CLAIMS AGAINST UNITED STATES—APPROPRIATIONS—AUTHORITY OF EXECUTIVE DEPARTMENT—ACT OF MARCH 3, 1887.
   Though an executive department has no authority to bind the government in excess of appropriations, yet where an appropriation has been made by congress for a general purpose contemplating a multitude of acts to be done by the department, its agency is general within those limits; and where persons act in good faith under orders of the department, no excess of authority in giving orders above the prescribed limits will be presumed, and the burden of proving this defense is upon the government, when the facts are peculiarly within its power, and the creditor was not in circumstances to ascertain them.

2. SAME—CONSULS—EXPENDITURES UNDER DIRECTIONS.
   The government having appropriated $10,000 to enable the state department to participate in the World's Industrial Exposition, at New Orleans, the department sent to the petitioner, then consul at Nicaragua, a circular letter, "suggesting" that he procure certain characteristic articles as souvenirs of his consulate for the exposition, referring to an appropriation by congress, and stating that dependence should not be placed upon voluntary contributions. A few articles were accordingly purchased by the petitioner, and forwarded to the representative of the department, and accepted. A year and a half afterwards, when his bill was presented, he was told that the appropriation was exhausted. Upon suit in this court under the provisions of the act of March 3, 1887, *held,* that the reasonable construction of the circular was a request or order to procure the articles at the expense of the government.

3. SAME—DUTY OF CONSUL.
   *Held,* also, that there was no presumption that this order when made was an illegal act, or in excess of the appropriation; that the consul was in no situation to inquire into the extent of previous orders issued by the department; and had then, and has now, the right to rely on the presumed authority of the department under the appropriation, until the contrary is proved.

4. SAME.
   The fact that the appropriation was found a year and a half after to be exhausted, is not such proof. The petitioner was therefore held entitled to judgment, as on an authorized and binding contract with the government.

(*Syllabus by the Court.*)

Consul's Claim for Reimbursement.

*Leavitt, Peters & Whittaker,* for the petitioner.

*Stephen A. Walker,* U. S. Dist. Atty., and *Abram J. Rose,* Asst. U. S. Dist. Atty., for the United States.

BROWN, J. On the 17th of August, 1887, Humphrey H. Leavitt, the petitioner above named, filed his petition in this court pursuant to the

provisions of the act of March 3, 1887, (24 St. at Large, c. 359, p. 505,) to recover of the United States the sum of $72, alleged to have been expended by him in January, 1885, as United States consul in Nicaragua, by the direction of the department of state, in procuring certain articles for the World's Industrial Exposition at New Orleans. A copy of the petition was duly served upon the United States attorney, and sent to the attorney general, as directed by the said act. The United States district attorney appeared and defended, and the cause was tried before the court without a jury, as required by section 2. I find the following facts:

### FINDING OF FACTS.

(1) That the petitioner was the first appointee of the consulate at Managua, Nicaragua; that he qualified in August, 1884; arrived at Managua in the latter part of September of that year, and thereupon entered upon and performed the duties of his consulate, until relieved by his successor in 1886. (2) In December, 1884, he received, inclosed in a dispatch from the department of state, the following circular letter:

### "CIRCULAR.

### "DEPARTMENT OF STATE.

### "WASHINGTON, D. C., November 17, 1884.

*"To the Consular Officers of the United States*—DEAR SIRS: Referring to the previous circulars issued from this department respecting the contributions requested on the part of the consular corps in behalf of the World's Exposition, I have the pleasure, in behalf of the department, to express appreciation of the very general response in reply thereto. It seems, however, that some of the consuls have construed the request to be of a more extended nature than intended, and have hesitated in action because means and time seem not to justify the effort to obtain a large number of contributions, or articles of importance and bulk. There is ample time, but the appropriation is an act of congress. I beg to suggest that a souvenir which may characterize the industries or peculiarities of the consulate will be most acceptable, even though of the smallest degree, or in minute shape, if appropriate and attractive; and it is not desired that consuls should depend upon voluntary contributions. It gives me pleasure, also, to advise that the inauguration of this grand enterprise will not take place until the 15th of December; and, lasting as it does until the 1st of June, 1885, there is ample time for every consul to forward some striking representation; in view of which fact, please ship by freight. I have the honor to be, dear sir, very respectfully yours, etc.,
              "CHAS. S. HILL, Representative Department of State."

—And that the petitioner did not receive any other circular or letter upon the same subject. The original of said circular letter is filed in the archives of the consulate at Managua. (3) That pursuant to the suggestion of the above circular letter, the petitioner, in January, 1885, purchased various articles characteristic of the industries and peculiarities of his consulate, of the value of $72, and paid therefor, which he at once forwarded addressed to Charles S. Hill, representative of the World's Exposition at New Orleans, care of Houghwout Howe, U. S. Despatch Agent, New York, pursuant to previous instructions to that effect. (4) That the articles so purchased were received, and placed under the di-

rection of the department of state in the exposition at New Orleans, and that an award of merit was subsequently presented to the petitioner by said Hill, in the state department, for the exhibit thereof made. (5) That said Hill was duly appointed, and acted as representative of the department of state in the matters concerning the said exposition. (6) That in 1886, upon the petitioner's return from Nicaragua, the bill for the above articles was presented, with his accounts, to Mr. Sinclair, the chief of the consulate bureau, by whom he was referred to said Hill in respect to said purchase; that thereupon his account, with vouchers in triplicate, was made out and delivered to said Hill, as directed by him, by whom the petitioner was told that a check would be sent him for the amount as soon as the deficiency bill had passed; that the appropriation by the act of congress had been exhausted; and that they expected to pass a deficiency bill very shortly; that afterwards, in answer to a demand of payment, the following letter was received from the department of state:

### "DEPARTMENT OF STATE.

"WASHINGTON, August 11, 1886.

"*H. H. Leavitt, Esquire, No.* 280 *Broadway, New York*—SIR: A copy of your letter of the 13th ultimo, relating to the articles furnished by you for the late exposition at New Orleans, has been sent to Mr. Hill, who was the representative of this department at that exposition. I am, sir, your obedient servant, JOS. D. PORTER, Assistant Secretary."

(7) That by act of July 7, 1884, (23 St. at Large, c. 332, p. 207,) there was an appropriation by congress "to enable the several executive departments * * * to participate in the World's Industrial and Cotton Centennial Exposition to be held at New Orleans," of various sums of money; among others, "for the state department, ten thousand dollars." (8) That when the petitioner's bill was presented for payment, in July or August, 1886, the above appropriation had been exhausted. It does not appear at what time prior thereto the appropriation was exhausted; nor whether at the time the circular letter above mentioned was sent to the petitioner, or was received and acted on by him, the amount of said appropriation had been covered in previous orders.

Upon the foregoing facts, it is to be observed, that the first section of the act of March 3, 1887, gives the court of claims jurisdiction to hear and determine "all claims founded upon * * * any regulation of an executive department, or upon any contract, expressed or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable." Section 2 confers upon the United States district courts concurrent jurisdiction "as to all matters named in the preceding section where the amount of the claim does not exceed one thousand dollars;" such causes to "be tried by the court without a jury." Upon the facts above found, it is contended in defense that the circular letter of October 17, 1884, does not purport to direct or authorize consuls to make any purchases

at the charge of the United States; and, second, that if it does authorize such purchases, it is not binding upon the government, because the department of state had no authority to authorize such a debt to be contracted in the absence of appropriations therefor. Sections 3679 and 3772 of the Revised Statutes in effect prohibit any expenditure or contract in behalf of the government in excess of appropriations therefor, except in the war and navy departments, for specific purposes. *Bradley* v. *U. S.*, 98 U. S. 104, 112. I cannot doubt that the proper construction of the circular letter of November 17th is that the consuls to whom it was addressed were desired to procure by purchase on account of the United States, to a limited extent, characteristic articles as souvenirs of their respective consulates. The circular says: "It is not desired that the consul should depend upon voluntary contributions." It ends: "Please ship by freight." The preceding paragraph says: "There is ample time; but the appropriation is an act of congress." The suggestion and the request, coming from the department of state, were practically equivalent to a direction or command. The reference to the appropriation as "an act of congress" would be altogether misleading if the circular had been intended by the department to be understood by the consuls as a request to pay for the articles out of their own pockets. Ten thousand dollars had in fact been already appropriated by congress for the especial use of the state department in this matter, as was presumably known to the petitioner. The subsequent treatment of the matter by the department, and by Mr. Hill, as its representative, also shows clearly that the expense of procuring such articles was not designed to be at the consul's personal charge. The expenditure made by the consul was certainly moderate; and it is not claimed to have been in excess of the "suggestion" or intent of the circular. In purchasing the articles the petitioner relied, and, in my judgment, had a right to rely, upon the construction of the circular, above given. Upon this transaction there was, therefore, an implied contract with the government to reimburse him for the amount paid; and the circular itself was also equivalent to a "regulation of an executive department" upon this particular topic, and within the first section of the act above stated, unless the department had no authority to make such a contract, or to issue such a circular at the time it was forwarded to the petitioner.

Counsel for the government contend that not only the sections of the Revised Statutes above referred to, but the various acts of congress authorizing government participation in the exposition, show at every step that the government was not to be bound; and that the various departments had no authority to bind it, beyond the precise sums appropriated. The principle is, doubtless, correct, (*Bradley* v. *U. S.*, *supra*;) but the proofs, I think, are not sufficient to warrant its application as a bar of the petitioner's recovery in this case.

It is not claimed that the circular of November 17, 1884, and the petitioner's purchase of articles under it, were not properly within the appropriation of $10,000 for the state department made by the act of July 7th, unless the obligations already contracted were in excess of that sum.

There is no proof, however, as to the amount of obligations contracted by the state department under that appropriation before the circular was forwarded to the petitioner, and acted on by him. Mr. Hill had timely notice of the petitioner's purchase, as appears by his letter as representative of the state department from New Orleans dated February 26, 1885. The things purchased were received, not only without objection, but "with his sincere thanks in behalf of the department." In these circumstances, and in the whole proofs, there is no intimation that the purchase of these articles at that time made the expenditure run up in excess of $10,000.

The authority to the department was a general authority up to the limit of $10,000. It was a general agency within that limit, and for the purposes contemplated. The act of congress contemplated and provided for a multitude of acts and expenditures, not in the aggregate exceeding that sum. Whether or not that limit had been previously passed was a matter not possible to be known by the petitioner, and even now scarcely ascertainable by him; but peculiarly within the knowledge of the principal, the defendant here. In such a case, where the authority is general up to an assigned limit, as against a person dealing with the agent in good faith and without means of knowledge, the burden of proof at least should be held to be upon the principal to show that that limit had been passed, if he wishes to deny the authority of the agent upon that ground. Such I think are all the analogies of the law. Inasmuch, also, as sections 3679 and 3772 of the Revised Statutes prohibit any department or public officer from making any expenditure or contract in excess of appropriations, a violation of these provisions of law is not to be presumed; certainly not a violation by the department of state, until the fact affirmatively appears. The petitioner, upon receiving the circular, was in no situation, as above stated, to question the authority of the department to issue it, or to authorize the desired expenditure. It would have been a singular proceeding if, before acting upon the circular, the petitioner should have endeavored to verify the authority of the state department by an inquiry into the number and amount of previous or contemporaneous orders. Such inquiries would be likely to be deemed meddlesome and insubordinate, and followed by speedy removal from office. He had a right to rely upon the presumption that the head of the department was acting within the prescribed limits of his authority. Under such circumstances, when he brings suit for the moneys expended in pursuance of virtual instructions, there is, it seems to me, special reason why the same presumption should prevail, until the contrary appears by proof of facts sufficient to show that, at the time when the orders were given and acted on, the limits of the agent's authority, *i. e.*, the expenditure authorized by congress, had been passed. There is no such proof in this case. The circular and the request to the consul must, therefore, be deemed duly authorized at the time, and binding, as an implied contract with the government. The cases cited, in which the government has been held not bound, were where the appropriation was for a single specific purpose; and the contractor had full knowledge of the limitation.

*Curtis* v. *U. S.*, 2 Ct. Cl. 144, 152; *Trenton Co.* v. *U. S.*, 12 Ct. Cl. 147. The fact that the appropriation was found to be exhausted a year and a half afterwards, when the bill and the consul's accounts were presented for payment, does not constitute such proof. If authorized at the time it was issued and acted on, it could not be invalidated by the payment of subsequent charges or expenses to the extent of the appropriation. *Trenton Co.* v. *U. S.*, 12 Ct. Cl. 147, 159. The mere fact that when the bill was presented for payment there was no appropriation remaining, is, therefore, no bar to the present action. Section 10 of the act of March 3, 1887, provides as follows: "From the date of such final judgment or decree interest shall be computed thereon, at the rate of four per centum per annum, until the time when an appropriation is made for the payment of the judgment or decree;" a specific recognition of the fact that a judgment may be rendered, in a proper case, although there is no present appropriation for its payment.

### CONCLUSION OF LAW.

Upon the above facts the petitioner is entitled to judgment against the United States for the sum of $72, and $14.21 interest, amounting to $86.21, together with the costs provided by section 15 of the act of March 3, 1887 to be taxed. A stay of 60 days is allowed after service of a copy of this decision on the United States attorney.