SCHERR AND McDERMOTT, INC.

v.

The UNITED STATES.

No. 311-64.

United States Court of Claims.

May 13, 1966.

Roger M. Dougherty, Washington, D. C., for plaintiff. Patrick J. Head and John L. Ingoldsby, Jr., Washington, D. C., of counsel.

Isaac D. Benkin, Washington, D. C., with whom was Asst. Atty. Gen., John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COLLINS, Judge.

This action is based upon a contract entered into by the International Cooperation Administration[1] and Smith, Scherr & McDermott, a partnership whose interest was acquired by the present plaintiff. Plaintiff seeks to recover an amount representing overhead which it incurred in performance of the contract, but, regarding which, the Government refused reimbursement.[2] Defendant has moved for summary judgment, and plaintiff has filed a cross-motion for summary judgment.

The contract, No. ICA–W–389, dated August 23, 1957, related to the development of the Korean handicraft industry. Its original term was for 28 months. The services to be performed by plaintiff consisted of the following: establishing a program for the training of Koreans at American schools of industrial design; assisting in the establishment of handicraft courses at Korean colleges; and setting up and operating, in Korea, a handicraft demonstration center. Plaintiff was to receive a fixed fee (originally $35,000) and reimbursement of its costs (base salaries, overseas differential, overhead, etc.). However, the contract stated: "In no event shall the total obligation of ICA to the Contractor under this Contract exceed * * * ($248,-000.00) without prior written approval of ICA."

With respect to overhead, the contract set forth a provisional rate of 65 percent of base salaries. This rate, which was "based upon an analysis * * * by ICA of relevant data relating to the Contractor's overhead cost," was "subject to revision as at the end of the Contractor's fiscal year to a rate which will reimburse the Contractor for the actual overhead costs allocable to this Contract on the basis of such annual or other audits as ICA (or other appropriate U.S. Government agency) may make." The contract went on to provide that:

> Promptly following establishment of an actual overhead rate by any such audit, an appropriate adjustment will be made in the billings for the period covered by the audit, and the rate so established shall become the provisional rate for the ensuing fiscal year. The provisional rate and payments for subsequent fiscal years shall be computed and adjusted accordingly.

The meaning of the above provisions is one of the matters now in dispute.

No audit was performed by defendant during the original 28-month term. The overhead payments which plaintiff received were based upon the provisional rate of 65 percent of base salaries. Just prior to expiration of the original term, the parties signed a "letter of intent" which authorized plaintiff to continue its services. In March 1960, the parties executed Amendment No. 6 which extended the term of the contract for 1 year. Also, the amendment increased the maximum obligation to $348,000 and the fee to $50,500. A new overhead clause was added, but it differed from the initial provision only slightly. A maximum limit of 72 percent was placed upon the rate of reimbursement for actual overhead. (Previously, there was no limit upon actual overhead payable.)

Performance of the contract was completed on February 22, 1961. Government reports described plaintiff's work as "very satisfactory" and its performance as "superior." The only audit made

---

1. In November 1961, the International Cooperation Administration (ICA) was abolished and was replaced by the Agency for International Development (AID).

2. For purposes of this opinion, the term "plaintiff" will refer both to Scherr and McDermott, Inc, and to its predecessor, Smith, Scherr & McDermott.

by defendant took place in 1962, after full completion of the contract. The audit revealed (1) that reimbursements for overhead had totaled $86,782.68 and (2) that plaintiff's actual overhead had been $102,185.97.[3] By letter of May 15, 1962, the chief of the Contract Audit Branch, Office of the Controller of AID, advised plaintiff it would receive $3,414.-56 of the $15,403.29 difference. The remainder ($11,988.73) could not be recovered, since any payment beyond $3,-414.56 would cause total payments to exceed defendant's maximum obligation ($348,000).

Plaintiff sought to obtain the amount of unreimbursed actual overhead from AID. The chief of the Contract Services Division denied plaintiff's claim. Plaintiff appealed, under the disputes clause of the contract, to the AID Board of Contract Appeals. That board denied plaintiff's claim, and the subsequent effort of plaintiff to obtain relief from the General Accounting Office was also unsuccessful. The present suit is for the recovery of the amount of $11,988.73.

As the basis for its motion for summary judgment, defendant relies primarily upon the clause which limited the total obligation of the Government to $348,000. Defendant asserts that, since plaintiff has received that amount, the Government has no duty to make further payments. In support of its position, defendant cites Greenfield Tap & Die Corp. v. United States, 68 Ct.Cl. 61 (1929), cert. denied, 281 U.S. 737, 50 S.Ct. 333, 74 L.Ed. 1152 (1930), which case is clearly distinguishable from this case.

*Greenfield Tap & Die Corp.* involved two contracts, one of which was a "cost-plus contract." The court denied recovery with regard to the cost-plus con-

tract. An alternative ground for this holding was the fact that the contractor had received $100,000, the amount stated in the contract to be the maximum payable by the Government. 68 Ct.Cl. at 77. It is imperative to note, however, that the cost-limitation clause in *Greenfield* differed significantly from the one contained in the ICA contract here. The *Greenfield* clause provided as follows:

" * * * the payments due the contractor * * * shall in no event exceed a total of * * * [$100,-000], and in case the entire work contemplated by this contract shall not have been satisfactorily completed when the total payments due have reached the sum of * * * [$100,-000], the contractor shall complete the remaining work without further compensation of any kind." [68 Ct.Cl. at 75.]

Thus, the maximum stated in the *Greenfield* contract was, according to the express agreement of the parties, absolute. However, the limit expressed in the ICA contract was not similarly unconditional. The contract stated that the Government's obligation would not exceed the specified amount "without prior written approval of ICA." In other words, the parties did envision the possibility that, under certain circumstances, the maximum could be increased. Therefore, the precise ruling in Greenfield Tap & Die Corp. v. United States does not control the present case.[4] The mere existence of the cost-limitation clause is not determinative here.

It appears that defendant is correct in asserting that plaintiff never informed ICA that total costs would exceed $348,-000. However, under the circumstances of this case, this is not a decisive fact.

3. For the period covered by Amendment No. 6 (12/24/59 to 2/22/61), the 72 percent maximum was applicable.

4. A similar distinction can be drawn between the present case and Stewart-McGehee Constr. Co. v. United States, 58 Ct. Cl. 1 (1922). In the latter case, the contract provided that the plaintiff was to be paid (1) its costs and (2) a fee, based upon a formula expressed in the

contract and subject to a stated maximum. The plaintiff had received, for a certain period, the maximum fee of $65,000. The court held (in part) that the plaintiff was not entitled to any additional fee. 58 Ct. Cl. at 9.

The contract in Stewart-McGehee did not provide for possible increase of the maximum fee applicable to the period in question.

We have concluded, for reasons to be explained, (1) that conduct on the part of the Government excused the requirement of prior approval for an increase in the maximum and (2) that plaintiff is entitled to summary judgment in its favor.

Plaintiff argues that the Government had a contractual duty to conduct at least one audit of plaintiff's books per year. We agree with plaintiff's contention. As indicated above, the contract provided a provisional overhead rate of 65 percent of base salaries. This was to be revised at the end of each of the contractor's fiscal years. The revision was to reimburse plaintiff for actual overhead costs determined "on the basis of such annual or other audits as ICA * * * may make." We cannot accept defendant's contention that it had complete discretion as to the timing of its audit. The various provisions of the contract (quoted previously) show unmistakably that *each year* the Government was to determine actual overhead costs and make appropriate adjustments. The only discretion granted to the Government by the language of the contract was whether more than one audit should be made annually.

■ Since defendant did no auditing until more than 1 year after performance had been completed, it violated its contractual duty. Our decision in this respect is contrary to that of the AID Board of Contract Appeals.[5] It

seems clear, however, that the question is one of law. See, e. g., River Constr. Corp. v. United States, 159 Ct.Cl. 254, 262 (1962). Regarding such matters of contract interpretation, board determinations are not entitled to finality.[6] Therefore, our rejection of the view of the AID Board is not inconsistent with the requirements of the Wunderlich Act, 68 Stat. 81 (1954), 41 U.S.C. §§ 321, 322 (1964).[7]

■ The failure of the Government to perform the required audits does not in itself entitle plaintiff to monetary relief. However, it is our opinion that defendant's lapse did cause detriment to plaintiff. In many cases, this court has expressed the notion that a contract contains an implied term to the effect that neither party shall hinder the performance of the other. See, e. g., Dale Constr. Co. v. United States, 168 Ct.Cl. 692, 700 (1964). In the present case, it cannot be said that the Government interfered with plaintiff's contract performance as such. However, we do find that the failure to audit resulted in plaintiff's inability to determine actual overhead. Consequently, plaintiff was deprived of the opportunity to make a timely request for an increase of the maximum payable. We conclude, therefore, that plaintiff was excused from the requirement of obtaining the prior approval of ICA for an increase of the cost limitation.[8]

5. In the section of its decision entitled, "Conclusions of Law," the AID Board of Contract Appeals stated that: "* * * A.I.D. was under no obligation to make audits on an annual basis."

6. In its answer, defendant alleged two affirmative defenses, payment of the maximum amount and finality of the decision of the AID Board of Contract Appeals. Although defendant's motion for summary judgment its based solely upon the first defense, defendant stated that it is not waiving the second.
   Our decision is such that the question of finality must be discussed, even though defendant's motion does not assert that defense.

7. 41 U.S.C. § 322 states that no Government contract shall contain a provision

making final on a question of law the decision of any administrative board, etc.
   The disputes clause of the contract involved in this suit was altered by Amendment No. 6. The clause, as amended, is in express accord with the rule of 41 U.S.C. § 322.

8. Our conclusion is consistent with the notion that, when a promisor (whose promise is conditional) hinders or prevents the occurrence of the condition, performance of the condition may be excused. See generally, 3A Corbin, Contracts § 769 (1960). The argument of defendant that, in any event, it had no duty to raise the maximum will be discussed infra.
   Defendant has cited a number of deci-

■ Defendant argues that, even assuming the contract envisioned annual audits, plaintiff waived the requirement. There is no indication in the record that plaintiff ever asked ICA to make an audit. Also, defendant is correct in pointing out that Amendment No. 6, entered into more than 2½ years after commencement of the contract, contained provisions regarding audits virtually identical to those set forth in the original contract. Nonetheless, we cannot conclude that plaintiff must be charged with waiver.

■ First, the contract did not state that plaintiff was required to request the making of audits. The Government's duty in this respect was unconditional. Secondly, the existing record contains no affirmative indication of conduct by plaintiff which would constitute waiver. Apparently, the Government made no effort, before the AID Board of Contract Appeals, to establish waiver. It seems clear that, regarding this matter, the burden of proof was upon the Government,[9] for the assertion that plaintiff waived the necessity of audits is in the nature of an affirmative defense. Cf. Rule 19(b). Since defendant failed to make an adequate showing, we must reject its argument.

Another assertion of defendant is that nothing prevented plaintiff from examining its books and determining whether actual overhead exceeded the provisional rate. Also, the AID Board stated that: "* * * the Contractor was in the best position to know whether the cost of its services did result in charges beyond the maximum obligation * * *." We cannot accept these views.

It is significant that the above-quoted portion of the board decision was set forth in the board's "Conclusions of Law." The board was expressing a legal opinion and was not purporting to make a finding of fact. Nothing in the board's "Statement of Facts" relates explicitly to the matter of plaintiff's ability to ascertain overhead. Moreover, the record before us is essentially devoid of evidence regarding this question. Under these circumstances, the Government must bear responsibility for the lack of evidence. See footnote 9, supra.

The contract originally contained the following explanation of overhead:

The reimbursement for overhead * * * is intended to cover those items which are normally included by the Contractor in indirect cost in accordance with generally accepted accounting principles, and such items of cost shall not be billed directly under other provisions of the Contract, nor shall such costs include items of expenditures which are inadmissible as overhead costs under standard government practices.

Under Amendment No. 6, the above clause was made more specific regarding

sions of the Armed Services Board of Contract Appeals regarding cost-reimbursable contracts. For example, in Weinschel Eng'r Co., ASBCA No. 7046, 1962 BCA ¶ 3348, the board held that the contractor could not recover (otherwise reimbursable) costs which were in excess of the cost limitation specified in the contract. The contractor had failed to give timely notice that its costs were going to be greater than the stated limit. (The limitation-of-cost clause provided, *inter alia*, that the contractor was not bound to continue performance if to do so would cause its expenditures to exceed the sum allotted for the contract.)

There are several material differences between *Weinschel* and the present case. Weinschel was aware of the fact that an overrun of costs are going to occur. Moreover, there was in *Weinschel* no suggestion that the contract obligated the Government to perform audits and determine overhead. For reasons similar to these, we find that none of the ASBCA decisions cited by defendant is directly pertinent.

9. In supplemental briefs filed at the request of the court, each party asserted that the burden of proving plaintiff's ability to determine its actual overhead rested on the other party. Defendant argued that plaintiff had failed to meet its burden; plaintiff argued the reverse. Both parties felt that there should not be further proceedings for the introduction of evidence. (Only documentary evidence was presented to the board.)

"inadmissible" expenditures; a detailed statement of cost principles was incorporated into the contract. Even though overhead was to be determined largely on the basis of "generally accepted accounting principles," we are unwilling to *assume* that plaintiff was in a position to make a reasonable determination of actual overhead. It is not self-evident that plaintiff could determine the extent to which its various indirect expenses were allowable under Government standards. Plaintiff points out that ultimately the Government auditor applied two different overhead rates, one regarding the home staff, the other regarding the field staff. Administrative bodies have recognized that, in some cases, a contractor may be unable to ascertain its overhead.[10] With respect to the present case, in view of the Government's failure to carry out its responsibility, it is reasonable to hold that plaintiff was not able to make its own determination of actual overhead.

Finally, we have the defendant's contention that, even if audits had been conducted and the likelihood of an overrun disclosed, the Government had no duty to increase its maximum obligation. This argument cannot be decisive under the circumstances of this case. Regardless of the existence of any duty on the part of the Government, the fact remains that, had the Government not defaulted in making the required audits, plaintiff might have obtained an increase in the maximum limits to an extent that plaintiff could have been reimbursed for its actual outlay of expenses. Of course, it is impossible to say what would have happened had ICA fulfilled its contractual duty to audit, but this impossibility is attributable to the inaction and fault of the Government. Cf. Anthony P. Miller, Inc. v. United States, 348 F.2d 475, 172 Ct.Cl. —— (July 1965). While predicated on the Capehart Act limitation, the *Anthony P. Miller, Inc.*, case does stand for the general proposition that maximum contract provisions do not ordinarily control where the contractors suffer additional costs because of the Government's fault.[11] At any rate, in the present case, it follows that any doubts regarding plaintiff's either

10. Plaintiff cites ITT–Kellogg Division, ASBCA No. 9108, 65–1 BCA ¶ 4635. In this case, the Armed Services Board of Contract Appeals denied recovery (of costs which were in excess of the stated limit), having found that the contractor had been able, during performance of the contract, to determine its costs. The board distinguished situations in which the Comptroller General had accorded favorable treatment to similar claims. According to the ASBCA, the Comptroller General decisions were based upon the fact that the contractor's failure to notify the Government of an impending overrun was caused by inability to ascertain (overhead) costs during performance.

One of the Comptroller General decisions, B–137343 (Aug. 12, 1964), related to a claim of Arthur D. Little, Inc., arising out of a contract with ICA, the predecessor of AID. The Comptroller General asked AID, which had denied the claim, to reconsider the matter with a view toward settlement. The basis for this request was explained, in part, as follows:

"The making of an equitable adjustment at this time for overhead costs which exceeded allowances to the Arthur D. Little Company at the provisional rates might be proper since this Office has allowed similar claims where it appeared that contract cost limitations were exceeded solely because of the contractors' inability to ascertain during contract performance whether the specified provisional overhead rates in their contracts were sufficient to cover all allowable types of overhead costs."

Clearly, the Comptroller General considered, with regard to a contract similar to that involved in the present case, that the contractor might have been unable to determine actual overhead.

11. Anthony P. Miller, Inc. v. United States, supra, held that the maximum limitation of the Capehart Act does not prevent a contractor from receiving excess costs attributable to (a) the Government's defective plans and specifications; (b) claims within the changed condition clause; and (c) work done, under protest, at the direction of the contracting officer. The extra work required by the Government in that case resulted in an increase in costs of the contract above the amount of the insured mortgage.

seeking or obtaining an increase in the maximum limitation must be resolved against the Government. Plaintiff should not be penalized when the blame clearly belongs to the other party, here the Government.

To summarize, we have determined that plaintiff is entitled to recover. The decision of the AID Board of Contract Appeals was based upon erroneous legal conclusions and need not be accorded finality.[12] The board did not reach the question of amount of recovery, but the record before us is adequate to permit determination of this matter. Plaintiff claims $11,988.73. There is no dispute regarding the fact that this represents the amount of overhead expense incurred, but not reimbursed. Since we have concluded that the cost-limitation clause cannot be invoked by defendant, recovery of the claimed amount is proper.

Accordingly, defendant's motion for summary judgment is denied. Plaintiff's motion is granted, and judgment is entered for plaintiff in the amount of eleven thousand nine hundred eighty-eight dollars seventy-three cents ($11,-988.73).

---

12. Plaintiff asserts that its claim was outside the jurisdiction of the AID Board of Contract Appeals. In view of the decision we have reached, it is unnecessary to consider plaintiff's assertion.